Daniel G. Albert, J.
In this proceeding, pursuant to article 78 of the CPLR, petitioners seek a judgment declaring a recent amendment of the by-laws of the Nassau Democratic County Committee unconstitutional and invalid arid enjoining the respondent from enforcing it at the upcoming designating convention of the Nassau Democratic County Committee.
The challenged by-law, adopted by the respondent county committee at a special meeting on May 1,1971, is apparently intended to inhibit the practice of seeking “ cross-endorsements ”„ It provides that: ‘ ‘ Designations or nominations shall be made
only to persons who shall have agreed in writing, duly acknowledged, to refuse to accept the designation or nomination of any other political party or independent party or body; except that a candidate nominated for the Judiciary may accept a Republican nomination.”
The petitioners, members of the respondent county committee, contend that this by-law contravenes section 1 of article XIII of the Constitution of the State of New York which, in essence, prescribes the oath of office to be taken by members of the Legislature, and executive and judicial officers, and provides that 1 ‘ no other oath, declaration or test shall be required as a qualification for any office of public trust ”. Petitioners also contend that it is invalid because it conflicts with subdivision 4 of section 137 of the Election Law, which authorizes the designation or nomination of a person not enrolled as a member of the political party making such designation or nomination by a majority vote of those present “ at a meeting of the members of the party committee representing the political subdivision of the office for which a designation or nomination is to be made ”. In addition, petitioners urge that the by-law is violative of sections 131 and 248 of the Election Law, of sections 1 and 11 of article I of the State Constitution, and of the First and Fourteenth Amendments to the Constitution of the United States.
Before considering the merits of petitioners ’ contentions, there is a procedural question that should be dealt with. It is the opinion of the court that a proceeding under article 78 of the CPLR is not the appropriate procedure for resolution of the issues raised herein. Such a proceeding is merely a statutory substitute for the common-law writs of certiorari, mandamus and prohibition (CPLR 7801) and may be maintained only in those instances where, at common law, one of those writs could have been obtained. The instant proceeding would be in the nature *158 of mandamus, the function of which is “to enforce performance of some act or duty commanded by statute or relating to some public matter or right ” (Matter of Weidenfeld v. Keppler, 84 App. Div. 235, 237, affd. 176 N. Y. 562). The typical respondent is a public official and the sole exception, to this court’s knowledge, is that mandamus will lie against private corporations, apparently upon the theory that since the private corporation is a creature of the State, the State through its court, reserves the power to correct and punish abuses of the franchise or charter it grants (see Matter of Auer v. Dressel, 306 N. Y. 427). The proceeding, however, has been consistently held inapplicable to unincorporated societies or associations (see Matter of Weidenfeld v. Keppler, supra, to the effect that mandamus will not lie against the New York Stock Exchange, and Matter of Phalen v. Theatrical Protective Union, 22 N Y 2d 34, 40 to the effect that ‘ ‘ unincorporated labor unions are not the sort of bodies against whom mandamus traditionally lies.”). The respondent county committee is an unincorporated association (Saxer v. Democratic County Committee of Erie County, 161 Misc. 35, 36) and, therefore, a mandamus-type proceeding under article 78 of the CPLR is not the proper form for the prosecution of petitioners’ action against respondents.
Of course, this is not to say that the proceeding should be dismissed on that basis. The court has jurisdiction over the parties and may, therefore, ‘ ‘ make whatever order is required for its proper prosecution ” (CPLR 103, subd. [c] ; Matter of Phalen v. Theatrical Protective Union, supra, p. 41). Since the circumstances herein are not such as to bring the matter within any of the subdivisions of section 330 of the Election Law, the court is of the view that the proceeding should be deemed and dealt with as a plenary action for a declaratory judgment and ancillary injunctive relief and that, since there are no triable issues of fact raised by the affidavits submitted, that the instant application should be considered as a motion for summary judgment in that action.
Turning, then, to the merits of the controversy, the court is of the opinion that petitioners are entitled to judgment declaring the by-law in issue invalid and enjoining the respondent county committee from attempting to apply or enforce it.
A county committee may adopt rules governing its organization and actions provided such rules do not contravene either statutory or constitutional provisions (cf. Schleimer v. Knott, 181 Misc. 421). The Election Law of this State specifically provides, in subdivision 4 of section 137 that a majority of those present at a meeting of the members of the party committee *159 ‘ ‘ representing the political subdivision of the office for which a designation or nomination is to be made * * * may authorize the designation or nomination of a person as candidate for any office who is not enrolled as a member of such party ’ ’ (emphasis added). Section 248 of the Election Law prescribes the form of ballot to be used ‘ ‘ when the same person has been nominated for the same office to be filled at the election by more than one party ”.
Clearly, the scheme of the pertinent legislation recognizes the right of a person seeking public office to seek and obtain the nomination of more than one political party or independent group for that office. More important, the statutory scheme recognizes the right of the electorate, who are members of any party or independent group, to choose whom it will for its candidates for office.
The court is not unmindful of the history and purpose behind the enactment of this by-law by respondents and the enactment of an identical rule at the same time by their Republican counterparts. The obvious purpose of this arrangement between the leadership of the two great political parties is to stem the influence of the more recently formed “ third ” parties, such as the Liberal and Conservative Parties. To the extent that the by-law involved herein succeeds in this purpose, the result is that voters who choose to form or to align themselves with such groups are inhibited in the choice of persons they may select as candidates for various public offices under the banner of their own party. The tenor of the Election Law, as indicated particularly by the sections thereof cited supra, is that members of a political organization, including the “third-” or “splinter-” parties, shall freely choose their candidates and that those so chosen shall be free to accept or reject such candidacies. The by-law in issue imposes an arbitrary restraint upon that process which is, in the opinion of the court, not in harmony with the statute.
The by-law’s invalidity is also apparent upon consideration of the opinion of then Chief Judge Cullen in Matter of Callahan (200 N. Y. 59). There, the court considered and held (p. 60) “ plainly invalid and unconstitutional ” a statute (then section 136 of the Election Law) forbidding the committee of any party from nominating a candidate of another party or independent body for the same office. Chief Judge Cullen, in an opinion concurred in by a majority of the court, reasoned (p. 61) that: “ The electors have the right to vote for whom they will for public office, and this right cannot be denied them by any legislation (People ex rel. Bradley v. Shaw, 133 N. Y. 493 ; People ex rel. Goring v. President, etc. of Wappinger Falls, 144 id. 616.) *160 Equally, any body of the electors has the right to choose whom it will for its candidate for office and to appeal to the whole electorate for votes in his behalf. If the legislature has the constitutional power to prevent a committee of a party from nominating as its own candidate a candidate already in nomination by another party or body, it may equally, if it sees fit, forbid a convention from making such a nomination. It is true that the legislature may prescribe qualifications for office where there is no constitutional provision on the subject, but it has been settled law from the earliest period in the history of our state that it cannot enact arbitrary exclusions from office. (Barker v. People, 3 Cow. 686 ; Rathbone v. Wirth, 150 N. Y. 459 ; People ex rel. Devery v. Coler, 173 N. Y. 103.) If it cannot enact arbitrary exclusions from office, equally it cannot enact arbitrary exclusions from candidacy for office. What exclusion could be more arbitrary than that one party or organization should not be permitted to nominate the candidate of another.” and (p. 63), in words particularly appropriate to the issue herein, he added: “It is no answer to this position to say that the law permits conventions to nominate the candidates of other parties, and that, therefore, neither the right of the elector nor that of the candidate is impaired. Legislation to be valid must not only not deprive the elector of his right to vote for whom he will, but for what candidate he will, and it must not discriminate in favor of one set of candidates against another set. Would a statute which authorised a committee to nominate as its own candidate a candidate of either of the two great political parties, but not a candidate of one of the smaller parties, or authorized it to name a black-haired man, but not a red-haired man, be valid? ” (emphasis supplied).
Clearly, since the respondent committee’s powers are limited by the Election Law, what the Legislature cannot accomplish by enactment of a statute, the respondent committee cannot accomplish by rule or by-law.
Finally, it appears from the papers submitted by both sides to this controversy, particularly from written stipulations concerning certain facts, that it is the intent of the respondents to conduct in the very immediate future a county convention for the purpose of designating candidates for the fall election. It is also apparent and not disputed that such convention will consider the designation of candidates for town offices and that the respondents intend to enforce compliance with the by-law involved herein by anyone seeking a designation as candidate for town office.
It should be noted that, since the population of Nassau County is in excess of 750,000 persons, subdivision 5 of section 131 of the *161 Election Law mandates that ‘ ‘ party nominations of candidates for town and village offices shall be made at the fall primary preceding the election ”, not at party conventions, and sections 134 and 135 of the Election Law specify the mechanics of seeking such nomination by a designating petition. There is no authority in the Election Law or elsewhere that has been exhibited to the court which empowers the respondent committee to “ designate ” candidates for town offices at a convention. The Election Law clearly requires that, in this county, that process be accomplished by a primary election, among such candidates as file valid designating petitions (cf. Matter of Kooperstein v. Power, 153 N. Y. S. 2d 908, affd. 2 AD 2d 655, affd. 1 N Y 2d 868 ; Matter of Burns, 9 Misc 2d 360).
Therefore, in the opinion of this court, the respondent county committee has no authority (1) to conduct a convention for the purpose of “ designating ” candidates for town offices or (2) to require such candidates, or candidates for any office, to execute the document referred to in the by-law here in issue. The court finds such by-law invalid and the judgment to be granted herein will so declare and will enjoin respondents from any attempts to enforce compliance therewith.